DR. W. A. THOMPSON v. S. T. THOMAS, Administrator.

Eastern Section. ——— ——, ——.

T. W. Stanfield, of Chattanooga, for plaintiff in error.

J. B. Murray, H. C. McCalla and J. C. Nipper, all of Chattanooga, for defendant in error.

PORTRUM, J. Mary Thomas, colored, carried her eleven months' old infant son to Dr. W. A. Thompson, who had advised a circumcision operation, for the operation on June 25, 1927; the child was taken into the operating room and given a hypodermic injection in its arm and left there with its mother while the doctor went away for ten or twenty minutes; upon his return, the child was asleep, and he administered a local injection to deaden the surrounding tissue and prevent pain, after which he performed the operation. The child was then returned to the mother, sleeping, and she says the doctor told her it would sleep the afternoon away. She took it home and it remained in a state of profound slumber until five o'clock, when it aroused sufficiently to turn on its side and stopped breathing.

For its death, damages are claimed against the doctor, alleging that he negligently and carelessly administered a sleeping portion to an infant. The defense is that the doctor administered three drops of digitalis, which drug is not a narcotic but a heart stimulant. The local injection of apothesine was not a narcotic but was harmless, and the treatment was the recognized treatment.

The defense, if made out, would be a complete defense. The issue was narrowed to the question, Did he give a narcotic or digitalis?

The mother said he told her what he gave the child but she could not remember its name. The doctor says he gave digitalis so if the plaintiff establishes the allegation it will have to be done by circumstantial evidence and incriminating admissions. It was not necessary to give digitalis and when given it is as an extra precaution. Its purpose is to slow down the heart and strengthen the heart muscles. The symptoms following the administration of this drug apothesine is not that of drowsiness. Digitalis would tend to arouse the patient. The contrary is true of a narcotic.

When the doctor returned to the operating table, he found the infant asleep. This should have aroused his suspicion following a dose of digitalis. He had gone away to give the drug time to take effect. He performed the operation. And the child was carried away, fast asleep. The child was shown to be healthy and the fact the child slept through the operation negatives the idea it was undrugged and the drug given was digitalis. The doctor told the mother the child would sleep throughout the afternoon. This would have followed had he given an opiate but not had he administered digitalis. Dr. Morgan says it would be very improper for a doctor to turn loose a child after having administered sleep producing drugs until after the child waked up. He also says: ''It is very serious to give an infant morphine hypodermatically.'' The text books say morphine should never be given children under ten years

of age, and never hypodermically to those beneath fifteen years of age.

From the foregoing circumstances, symptoms and statement, we think the only reasonable inference to be drawn therefrom is that the doctor administered a sleeping portion. And because of the age of the child it was not in accord with recognized practice.

We are not concerned with the conflict in the evidence. The assignment directed at the charge is not well made and it, along with the others, are overruled.

Judgment affirmed with costs.

Snodgrass and Thompson, JJ., concur.